## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

|  |  |  |
|---|---|---|
| ALBERT USSERY and THE ESTATE OF MIRIAM USSERY, by and through ADMINSTRATRIX TAMMY JEAN MARTIN F/K/A TAMMY JEAN USSERY, | : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | CASE NO.: 5:13-CV-83 (LJA) |
| ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, | : : : | |
| Defendant. | : : | |

## ORDER

The Parties in the above-captioned matter have cross-moved for summary judgment. (Docs. 19, 21.) For the following reasons, Defendant's Motion for Summary Judgment (Doc. 19) is **DENIED** and Plaintiffs' Motion for Summary Judgment (Doc. 21) is **GRANTED**.

## BACKGROUND[1]

This action arises out of Defendant's denial of coverage under an insurance policy ("the "Policy") pursuant to which Defendant insured Plaintiffs' dwelling and personal property that subsequently were destroyed in a fire. Defendant denied Plaintiffs' claim in its entirety based on its discovery of a bankruptcy petition (the "Bankruptcy Petition") in which Plaintiffs listed a significantly lower personal property valuation than that stated in Plaintiffs' insurance claim. According to Defendant, the discrepancy between the two valuations conclusively established that Plaintiffs breached the concealment of fraud provision found in

---

[1] The relevant facts are derived from the Complaint (Doc. 1); Defendant's Answer (Doc. 5); Plaintiffs' Statement of Material Facts (Doc. 21-1); Defendant's Response to Plaintiffs' Statement of Material Facts (Doc. 25); Defendant's Statement of Material Facts (Doc. 19-1); Plaintiffs' Response to Defendant's Statement of Material Facts (Doc. 27); and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and affidavits, all of which are construed in the light most favorable to the non-moving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

the Policy. Plaintiffs dispute this determination. The facts of this case are relatively straightforward and mostly undisputed.[2]

Defendant issued Plaintiffs the Policy, which was effective from August 28, 2011 through August 28, 2012, insuring Plaintiffs' dwelling for $274,608 and their personal property for $205,956. (*See* Doc. 19-3.) At the core of the Parties' dispute is a provision in the Policy entitled "Misrepresentation, Fraud of Concealment" (the "Misrepresentation Clause"), which states that Defendant does "not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." (*Id.* at 26.)

On November 10, 2011, Plaintiffs' dwelling and the contents therein were completely destroyed in a fire, resulting in a total loss. (Doc. 21-1 at ¶¶ 5, 44.) After informing Defendant of the fire, Plaintiffs were instructed to prepare a Personal Property Inventory Loss form (the "Loss Form"), which required Plaintiffs to, among other things, approximate the original costs of their lost property. (Doc. 20-9 at 9-10.) With the assistance of their daughter, Plaintiffs prepared the Loss Form and submitted a sworn proof of loss valuing their personal property at the Policy limit of $205,956.[3] (Doc. 21-1 at ¶¶ 7, 41.) Plaintiffs also submitted a proof of loss to recover the full Policy limit of $274,608 for the destruction of their home. (*Id.* at ¶ 41.) Following the submission of Plaintiffs' claim, Defendant began investigating the veracity of Plaintiffs' personal property valuation. During the course of its investigation, Defendant discovered that, prior to the fire, Plaintiffs had filed for Chapter 13

---

[2] Local Rule 56 provides that "[a]ll material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." Throughout their briefing, the Parties purportedly "controvert" each other's statements, but then simply make arguments without pointing to anything in the record to support their arguments. (*See* Docs. 25, 27.) Accordingly, those facts asserted by a Party that are not specifically controverted by the opposing Party with specific citation to the record are deemed admitted. Of course, each Party still bears the burden of showing "that there is no genuine issue as to any material fact," Fed. R. Civ. P. 56(c), and that its motion is supported by the evidence submitted. *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004).

[3] The record is somewhat inconsistent regarding the exact value Plaintiffs assigned to their personal property in connection with the submission of their insurance claim. It appears Plaintiffs valued their personal property in the Loss Form at $202,741, but submitted the proof of loss requesting the full policy limit of $205,956. (*See* Docs. 19-1 at ¶¶ 4, 11; 21-1 at ¶ 41.) Because the Parties do not dispute that Plaintiffs would be entitled to the full policy limit if the Court rejects Defendant's arguments regarding whether judicial estoppel applies and whether Plaintiffs breached the Misrepresentation Clause, the Court will only refer to the value assigned in Plaintiffs' proof of loss.

bankruptcy in February of 2011.[4] (Doc. 19-1 at ¶¶ 5, 7.) In their Bankruptcy Petition, Plaintiffs valued their personal property at $2,700. (*Id.* at ¶ 8.)

Upon discovering the Bankruptcy Petition, Defendant exercised its right under the Policy to conduct an examination of Plaintiffs under oath. (*Id.* at ¶ 10.) At the examination, on February 23, 2012, Plaintiffs were advised of Defendant's investigation into their personal property valuation and the discovery of the Bankruptcy Petition. (*Id.* at ¶ 11.) In response to Defendant's inquiry into the differing valuations, Plaintiffs admitted that their Bankruptcy Petition did not list all of their possessions and inaccurately reflected the true value of their personal property. (*See Id.* at ¶¶ 13-22; *see generally* Docs. 19-4, 19-5.) Nevertheless, Plaintiffs maintained that they were simply following the advice of their bankruptcy attorney when valuing the property at $2,700. (Doc. 19-1 at ¶ 23.) Notably, Plaintiffs accurately valued their home in their Bankruptcy Petition, (Doc. 19-10 at 10), and there is no dispute regarding any depreciation of the home from the time the Policy was issued until the time of the fire. (Doc. 21-1 at ¶ 47.)

Based on the difference between Plaintiffs' personal property valuation in their proof of law and in their Bankruptcy Petition, Defendant determined that Plaintiffs had made material misrepresentations in connection with the submission of their insurance claim. (*Id.* at ¶ 33.) Consequently, by letter dated March 28, 2012, Defendant denied Plaintiffs' claim in its entirety (the "March 28 Letter"), asserting that Plaintiffs had violated Georgia law and breached the terms of the Policy. (Doc. 1-3.) The March 28 Letter did not set forth (i) the facts Plaintiffs allegedly misrepresented in the proof of loss, (ii) which Georgia laws Plaintiffs allegedly violated, or (iii) which provisions of the Policy Plaintiffs allegedly breached. (*Id.*)

Following the denial of their insurance claim, but before receiving a discharge in their bankruptcy, Plaintiffs amended their Bankruptcy Petition *nunc pro tunc* to include the exact inventory, and reflect the same value, of their personal property as listed in their insurance claim. (Doc. 21-1 at ¶ 29; *see also* Doc. 21-10.) The Bankruptcy Judge overseeing Plaintiffs' bankruptcy subsequently held that the amendment "related back to the original filing date of

---

[4] Plaintiffs originally filed for bankruptcy in 2009; however, that petition was dismissed on December 14, 2010. (Doc. 19-9 at 6.) The 2009 petition listed the same valuation of Plaintiffs' personal property as stated in Plaintiffs' 2011 petition. For purposes of this Order, the Court will only refer to Plaintiffs' 2011 petition (the "Bankruptcy Petition").

the Petition and resulted in no changes to the repayment terms under the confirmed Chapter 13 plan." (Doc. 30-2.) In addition, the Bankruptcy Judge modified the Chapter 13 plan to ensure that any recovery by Plaintiffs in this action would "be dispersed to the unsecured creditors to satisfy the best interest of creditors test." (*Id.*)

After amending their Bankruptcy Petition, on October 10, 2012, Plaintiffs submitted a letter pursuant to Georgia's bad faith statute, O.C.G.A. § 33-4-6, demanding payment of their insurance claim. (Doc. 1-4 at 2.) On November 1, 2012, Defendant denied Plaintiffs' demand, maintaining that Plaintiffs had made material misrepresentations in connection with the submission of their claim and, thus, were entitled to no recovery. (*See* Doc. 1-6.) As with its prior denial of coverage, Defendant did not question or request proof of any of the items Plaintiffs listed in their inventory or the valuation Plaintiffs assigned to their personal property in the proof of loss. (*Id.*) Instead, Defendant sought an explanation for Plaintiffs' "decision to omit items from their sworn bankruptcy petition," and requested that the Plaintiffs "present documents and information regarding any debt relief they realized as the result of the bankruptcy petition they filed, including documents and information regarding any effort they made to return or renounce those benefits." (*Id.* at 1-2.)

Defendant's adjustors subsequently testified that Plaintiffs' insurance claim was denied because of the significantly lower personal property valuation listed in the Bankruptcy Petition and Defendant's belief that judicial estoppel barred Plaintiffs from pursuing their claim. (*See* Docs. 20-1, 20-5, 20-7, 20-13.) Defendant's dwelling adjustor, Jackson Howell, testified that after completing his evaluation of Plaintiffs' claim, he was prepared to pay the policy limits. (Doc. 20-7 at 69:21-70:3.) Defendant's contents adjustor, Ashley Sikes, testified that he had no reason to dispute the items Plaintiffs listed in their inventory or the valuations Plaintiffs assigned to their lost personal property. (Doc. 20-13 at 18:21-19:1.) He further testified that Plaintiffs' inventory was a fair representation of what he would have expected to be in the home at the time of the fire, (*Id.* at 18:17:20), and that it would have been unreasonable to consider the value of Plaintiffs' personal property to be $4,000. (*Id.* at 22:19-22.) Nevertheless, Defendant's Special Investigative Unit ("SIU") analyst, Debra Hatfield, repeatedly confirmed that Plaintiffs' claim was denied because of the company's belief that judicial estoppel applied. (Doc. 20-1 at 34:12-13, 35:7-12, 37:7-16, 38:4-10.) In fact, when

asked to identify Plaintiffs' alleged material misrepresentation in the proof of loss, Ms. Hatfield responded that "the material misrepresentation is – relates to the judicial estoppel as far as the difference in what [Plaintiffs] told us." (*Id.* at 33:21-23.) Likewise, when questioned what laws Plaintiffs allegedly violated, Ms. Hatfield responded "judicial estoppel." (*Id.* at 56:17:21.) Finally, Defendant's SIU supervisor, Michael Simpson, who made the final decision to deny the insurance claim, agreed that "there was nothing that [Plaintiffs] claimed that wasn't in the house or that was grossly overvalued," and that, "[b]ut for the bankruptcy filing and what [Plaintiffs] swore to in the bankruptcy filing," Plaintiffs' claim would have been covered under the Policy. (Doc. 20-5 at 28:14-23.) Like Ms. Hatfield, Mr. Simpson confirmed that the "claim was denied solely because of the material misrepresentation in the bankruptcy filing in 2011 as it relates to [Plaintiffs' personal property]." (*Id.* at 30:3-7; *see also* Doc. 20-1 at 30:5-10 (stating that there was no reason to deny the claim "other than the amount of the contents that were submitted to the bankruptcy court and the value of the contents as submitted to [Defendant]").)

On March 7, 2013, Plaintiffs commenced this action, alleging that Defendant breached the Policy and acted in bad faith, in violation of O.C.G.A. § 33-4-6, by refusing Plaintiffs' demand for payment.[5] (Doc. 1.) On May 19, 2014, the Parties cross-moved for summary judgment on the following issues: (1) whether Plaintiffs' claim is barred by judicial estoppel; (2) whether Plaintiffs made materially misrepresentations in connection with the submission of their insurance claim such that they are entitled to no recovery; and (3) whether Defendant acted in bad faith when it refused Plaintiffs' demand for payment. (*See* Docs. 19-2, 21-2.) Each Party timely submitted their respective responses and replies. (Docs. 24-29.) As such, the Motions are now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[5] Following the death of Plaintiff Miriam Ussery, Plaintiffs amended their complaint, substituting The Estate of Miriam Ussery, by and through Administratrix Tammy Jean Martin, for Plaintiff Miriam Ussery. (Doc. 17).

any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form") (quotation omitted). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

"Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555-56 (11th Cir. 1984) (citation omitted). Cross-motions may, however, "be probative of the non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Id.* Nevertheless, the Court must evaluate each motion separately, "as each movant bears the burden of establishing that no genuine issue of material facts exists, and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004); *see also D & H Therapy Associates, LLC v. Boston Mut. Life Ins. Co.*, 640 F.3d 27, 34 (1st Cir. 2011) ("When there are cross-motions for summary judgment, the court must consider each motion separately, drawing all inferences in favor of each non-moving party in turn.").

## DISCUSSION

As noted above, Defendant denied Plaintiffs' claim in its entirety – *i.e.*, for the loss of their dwelling and their personal property. Because the Policy differentiates between "Dwelling Protection" and "Personal Property Protection" and provides septate coverage limits for each, the Court will analyze the issues raised by the Parties as it relates to Defendant's respective obligations to provide loss coverage.

### I.    Judicial Estoppel

#### A.    Personal Property Protection

Judicial estoppel prevents "a party from 'asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1293 (11th Cir. 2003) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1284 (11th Cir. 2002)). The purpose of the doctrine is "to protect the

integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quotation omitted). However, "[j]udicial estoppel is intended to be a flexible rule in which courts must 'take into account all of the circumstances of each case in making our determination.'" *Ajaka v. Brooksamerica Mortgage Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006) (quoting *Palmer & Cay, Inc. v. Marsh & McLennan Cos.*, 404 F.3d 1297, 1307 n. 17 (11th Cir. 2005)). The doctrine must therefore be invoked with care, since "[t]he strident and mechanical application of judicial estoppel leads it to become a sword of the defense bar rather than a shield of judicial integrity." *Thompson v. Quarles*, 392 B.R. 517, 529 (S.D. Ga. 2008). Ultimately, the decision of whether to apply the doctrine is made "by a court at its discretion." *New Hampshire*, 532 U.S. at 750; *see also Benton v. Benton*, 629 S.E.2d 204, 207 (Ga. 2006) (finding that judicial estoppel "is invoked by a court at its discretion, and . . . .[t]he circumstances under which it is appropriate are not reduced to any general formula or rule") (citation omitted).

It is undisputed that Plaintiffs' Bankruptcy Petition omitted certain assets and assigned a significantly lower personal property valuation than that stated in Plaintiffs' insurance claim. Accordingly, Defendant argues that Plaintiffs are judicially estopped from claiming a higher valuation in their insurance claim than what was stated in the Bankruptcy Petition. Plaintiffs, however, assert that any inconsistency was remedied by the amendment to their Bankruptcy Petition. Thus, the issue before the Court is whether, in light of the amendment to the Bankruptcy Petition, Plaintiffs are judicially estopped from recovery. Before reaching this question, however, the Court must first determine the applicable law.

The Eleventh Circuit has unequivocally stated that in "a diversity case, the application of the doctrine of judicial estoppel is governed by state law." *Original Appalachian Artworks, Inc. v. S. Diamond Associates, Inc.*, 44 F.3d 925, 930 (11th Cir.1995); *see also Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1261 (11th Cir. 1988) ("Had this case originated as a diversity action, it appears this court would be bound to apply the relevant state formulation of judicial estoppel."), *abrogated on other grounds by Grogan v. Garner*, 498 U.S. 279 (1991). Thus, because this is a diversity action that arose in Georgia, Georgia's doctrine of judicial estoppel applies. Georgia courts generally apply the federal doctrine of judicial estoppel where, as

here, "a bankruptcy proceeding is the earlier proceeding in which the debtor/plaintiff took a position allegedly inconsistent with that taken in the state court action." *IBF Participating Income Fund v. Dillard-Winecoff, LLC*, 573 S.E.2d 58, 59 (Ga. 2002) (citations omitted); *see also CSX Transp., Inc. v. Howell*, 675 S.E.2d 306, 308 (Ga. Ct. App. 2009) ("Since 1994 we have followed the federal doctrine of judicial estoppel, which precludes a party from asserting in a judicial proceeding a position inconsistent with a position successfully asserted by it in a prior proceeding."). The purpose is "to afford the judgment of the bankruptcy court the same effect here as would result in the court where that judgment was rendered." *IBF*, 573 S.E.2d at 59.

While Georgia courts generally follow the federal doctrine of judicial estoppel, they do not do so in every respect. Significantly, while the federal doctrine does not permit a plaintiff to avoid the application of judicial estoppel simply by amending his or her bankruptcy petition after an inconsistency is discovered, *see Burnes*, 291 F.3d at 1288, "Georgia courts do permit such amendments. Under Georgia law, a plaintiff may amend an erroneous bankruptcy schedule to avoid judicial estoppel." *Tuten v. Target Corp.*, No. 14-CV-3, 2014 WL 6908866, at *2 (S.D. Ga. Dec. 8, 2014); *see also Benton*, 629 S.E.2d at 207 ("This Court has determined that a debtor filing for bankruptcy . . . is not under any statutory duty to amend his or her schedule of assets, but, as in this case, may voluntarily amend the schedule to avoid consequences such as judicial estoppel."); *Jowers v. Arthur*, 537 S.E.2d 200, 201 (Ga. Ct. App. 2000) ("Amending the bankruptcy petition . . . precludes judicial estoppel from barring the claim."). Thus, where a party has successfully amended its bankruptcy petition, judicial estoppel will not operate to bar a future claim.

Defendant's contention that this rule "is limited in its application to omitted tort claims" is unavailing. (Doc. 24 at 21.) The rationale for Georgia courts' refusal to apply judicial estoppel after a bankruptcy petition has been amended is that the plaintiff can no longer be said to have taken "a position inconsistent with one successfully and unequivocally asserted in a prior proceeding." *Jowers*, 537 S.E.2d at 202; *see also Benton*, 629 S.E.2d at 207 ("Generally, judicial estoppel is inapplicable when a plaintiff has successfully amended his or her bankruptcy petition . . . because then it cannot be said that the position in the trial court is inconsistent with the position asserted by the plaintiff in the bankruptcy proceeding and,

therefore, judicial estoppel does not bar his or her claim."); *Clark v. Perino*, 509 S.E.2d 707, 710 (Ga. Ct. App. 1998) (finding that because of the bankruptcy court's "acceptance of the amendment to the schedules [plaintiff] filed with the court, it also cannot be said that [plaintiff's] present position in the trial court is inconsistent with one successfully and unequivocally asserted by her in a prior proceeding"); *Johnson v. Trust Co. Bank*, 478 S.E.2d 629, 631 (Ga. Ct. App. 1996) (same). Georgia courts further reason that, "while the underlying purpose of judicial estoppel is to prevent manipulation of the judicial process, it is the bankruptcy court that primarily is being manipulated." *Jowers*, 537 S.E.2d at 202. Therefore, if the bankruptcy court permits an amendment to the petition, then the Georgia court "should honor the bankruptcy court's actions." *Id.* There is no reason why this rationale should be limited to omitted tort claims.

It is undisputed that Plaintiffs amended their Bankruptcy Petition while their bankruptcy was still pending to reflect the same inventory and valuation of their personal property as listed in their insurance claim. The Bankruptcy Judge overseeing Plaintiffs' bankruptcy accepted the amendment, finding that it "related back to the original filing date of the Petition and resulted in no changes to the repayment terms under the confirmed Chapter 13 plan." (Doc. 30-2 at 2.) Consequently, under Georgia law, Plaintiffs can no longer be said to have taken a position in this proceeding that is inconsistent with the position taken in their bankruptcy proceeding.[6]

Georgia courts also refuse to apply judicial estoppel where a plaintiff successfully amends his bankruptcy petition because the plaintiff has gained "no unfair advantage in bankruptcy court. Any recovery he obtains from defendant will inure to the benefit of plaintiff's bankruptcy estate, and in turn, to the creditors who asserted claims to the estate's assets." *Johnson*, 478 S.E.2d at 631. The same holds true here. As ordered by the Bankruptcy Judge in the Plaintiffs' bankruptcy, any recovery Plaintiffs obtain from this lawsuit "over and

---

[6] To the extent that Defendant contends that Plaintiffs' dismissed 2009 bankruptcy petition serves as a basis for judicial estoppel, the Supreme Court of Georgia has unequivocally held "that judicial estoppel is not applicable when the earlier proceeding in which the allegedly inconsistent position was taken was a bankruptcy proceeding that concluded in dismissal of the petition because no benefit or unfair advantage results from a dismissal since its effect is to return the debtor and creditors to the status quo ante, with the debtor again liable for its debts and creditors free to use all legal remedies available to collect thereon." *IBF*, 573 S.E.2d at 60.

above exemptions will be dispersed to unsecured creditors." (Doc. 30-2 at 2.) Thus, to allow Defendant to use judicial estoppel to avoid liability would not only result in a windfall to Defendant, but it would also punish Plaintiffs' innocent creditors in the bankruptcy. *See Thompson*, 392 B.R. at 527 (finding it to be an "an incongruent remedy" to apply judicial estoppel where it would "allow [defendants] . . . to escape liability, while the [plaintiffs'] creditors are punished"); *see also Jowers*, 537 S.E.2d at 202 (refusing to apply judicial estoppel where it "would produce overly harsh and inequitable results, for then everyone (except the allegedly culpable tort defendant) would lose, including the debtor's innocent creditors"); *Middleton v. Caterpillar Indus., Inc.*, 979 So. 2d 53, 63-64 (Ala. 2007) (declining to apply judicial estoppel because it would result in the defendant becoming the "recipient of an unwarranted windfall, *i.e.*, the dismissal of [plaintiff's] potentially meritorious claim."). Such an inequitable result would cause judicial estoppel to "become a sword" of the Defendant "rather than a shield of judicial integrity," thereby thwarting the goal of the doctrine. *Thompson*, 392 B.R. at 529; *see also Biesek v. Soo Line R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006) ("Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application."). Accordingly, judicial estoppel does not bar Plaintiffs' claim for the loss of their personal property.

Even if the Court had determined that the federal doctrine of judicial estoppel applied, Plaintiffs would still prevail. Under the federal doctrine, "three factors typically inform the [Court's] decision: (1) whether the present position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or second court was misled and; (3) whether the party advancing the inconsistent position would derive an unfair advantage." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) (citing *New Hampshire*, 532 U.S. at 750-51).

Although Plaintiffs' amendment to their Bankruptcy Petition would not automatically preclude the application of judicial estoppel, upon weighing the *New Hampshire* factors, the Court would still refuse to apply the doctrine here. It is undisputed that Plaintiffs asserted inconsistent positions in their Bankruptcy Petition and in their insurance claim and that such

inconsistencies cannot be cured simply by amending the Petition. *See Burnes*, 291 F.3d at 1288. However, unlike the plaintiff in *Burnes*, Plaintiffs amended the Bankruptcy Petition while their bankruptcy was still pending,[7] rather than seeking to reopen the bankruptcy after receiving a discharge. In addition, the Bankruptcy Court accepted Plaintiffs' amendment and modified the confirmed plan. As such, it cannot be said that Plaintiffs successfully persuaded "a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled." *Strauss v. Rent-A-Ctr., Inc.*, 192 F. App'x 821, 823 (11th Cir. 2006) (finding that plaintiff did not successfully persuade the bankruptcy court in the earlier proceeding where the "bankruptcy court never entered any order discharging any of [the plaintiff's] debts"); *see also Nationwide Prop. & Cas. Co. v. Phillip Hunt & Cmty., & S. Bank, Inc.*, No. 11-CV-02591, 2014 WL 2698637, at *3 (N.D. Ala. June 13, 2014) (finding that "notwithstanding [insured's] failure to disclose his fire loss claim, he was not 'successful' in the bankruptcy because he never received a discharge of his debts") (citations omitted). Accordingly, Defendant cannot satisfy the second prong of the *New Hampshire* test.[8]

Moreover, as discussed above, because Plaintiffs successfully amended their Bankruptcy Petition prior to receiving a discharge, they derived no unfair advantage over Defendant or any of their creditors. In fact, even if Plaintiffs had failed to amend their Petition, their actions would have only "adversely impacted [their] creditors, but not [Defendant], which was neither a creditor nor a party to the bankruptcy proceedings." *Yerk v. People for the Ethical Treatment of Animals*, No. 09-CV-537, 2010 WL 3746815, at *4 (M.D. Fla. Sept. 21, 2010). While "there is no requirement that the party invoking judicial estoppel

---

[7] Rule 1009(a) of the Federal Rules of Bankruptcy Procedure permits a debtor to amend his petition, list, schedule, or statement at any time during the pendency of their case. Fed. R. Bankr. P. 1009(a); *see also Thompson*, 392 B.R. at 529 ("While a case is open, a debtor can freely amend his schedules.")

[8] In addition to the *New Hampshire* factors, the Eleventh Circuit also considers whether the alleged inconsistencies were "shown to have been calculated to make a mockery of the judicial system." *Burnes*, 291 F.3d at 1285. As the Eleventh Circuit indicated in *Strauss*, where the "bankruptcy court never entered any order discharging any of [the plaintiff's] debts," the plaintiff's inconsistent statements cannot be said "to have been calculated to make a mockery of the judicial system." 192 F. App'x at 823 (citing *Burnes*, 291 F.3d at 1285); *see also Smith v. Werner Enterprises, Inc.*, 65 F. Supp. 3d 1305, 1312 (S.D. Ala. 2014) (declining to apply judicial estoppel where "the plaintiff amended his schedules . . . before any possible benefit from nondisclosure could be realized"); *Young v. City of Mobile*, No. 13-CV-586, 2014 WL 3870716, at *4 (S.D. Ala. Aug. 7, 2014) (refusing to apply judicial estoppel because the plaintiff amended his bankruptcy filing before receiving a discharge).

show prejudice," *Ajaka*, 453 F.3d at 1345, that there was no prejudice to Defendant certainly weighs against applying the doctrine here.

When deciding whether to invoke judicial estoppel, "courts must always give due consideration to all of the circumstances of a particular case." *Burnes*, 291 F.3d at 1286. Considering the circumstances of this particular case, the Court finds that the balance of equities tips in favor of allowing Plaintiffs to pursue their claim for the loss of their personal property. Accordingly, the Court, in its discretion, declines to apply the doctrine of judicial estoppel as it would not advance the interest of equity under Georgia or Federal law.

### B. Dwelling Protection

It is undisputed that Plaintiffs accurately stated the value of their dwelling in their Bankruptcy Petition and in their insurance claim. Nevertheless, Defendant denied Plaintiffs' dwelling claim based on its belief that judicial estoppel applied. However, even if Plaintiffs were judicially estopped from pursuing their claim for the loss of their personal property, Defendant offers no explanation as to why Plaintiffs would also be judicially estopped from seeking coverage for the loss of their dwelling.

As discussed, judicial estoppel precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Burnes*, 291 F.3d at 1285. Because Plaintiffs did not make any inconsistent statements regarding their dwelling in their bankruptcy proceeding, judicial estoppel does not apply to prevent them from pursuing their claim for the loss of their dwelling in this proceeding.

## II. Material Misrepresentation

### A. Personal Property Protection

Defendant argues that it was justified in denying coverage for the loss of Plaintiffs' personal property because Plaintiffs breached the Policy's Misrepresentation Clause, which states that Defendant does "not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." (Doc. 19-3 at 26.) "[T]he Georgia Supreme Court 'has repeatedly held that the burden [is] upon the insurer to prove an affirmative defense, such as fraud on the part of the insured in obtaining the policy, or that a loss apparently covered by the policy came within an exclusionary clause contained in the policy.'" *Fiveash v. Allstate Ins. Co.*, 603 F. App'x 773, 775 (11th Cir. 2015) (quoting

*Reserve Life Ins. Co. v. Ayers*, 121 S.E.2d 649, 654 (Ga. 1961)). Defendant does not contend that Plaintiffs committed fraud when obtaining the Policy. Rather, Defendant argues that because Plaintiffs made material misrepresentations in their Bankruptcy Petition, the entire Policy is void under the Misrepresentation Clause.

    "Under Georgia law, misrepresentations on a proof of loss must be material and made with the intent to defraud the insurer to void coverage under the policy." *Certain Underwriters at Lloyd's London v. Witham*, No. 13-CV-325, 2015 WL 5684114, at *7 (M.D. Ga. Sept. 28, 2015) (citing *American Alliance Ins. Co. v. Pyle*, 8 S.E.2d 154 (Ga. Ct. App. 1940)); *see also Fiveash*, 603 F. App'x at 775 ("Under a concealment or fraud provision in an insurance contract, coverage is void if there has been a willful and intentional misrepresentation of material facts made for the purpose of defrauding the insurer.") (citation omitted). "A misrepresentation is material if it 'might affect the [insurer's] action in respect to . . . settlement or adjustment of the claim of the insured.'" *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1443 (11th Cir. 1984) (quoting *American Alliance*, 8 S.E.2d at 160)) (alterations in original). "However, the insurer need not actually rely on the representation or suffer any prejudice therefrom." *Id.* (citing *Pittman v. Am. Mut. Fire Ins. Co.*, 199 S.E.2d 893 (Ga. Ct. App. 1973)). "Whether a misrepresentation is material is a jury question, unless the evidence excludes every reasonable inference except that there was or was not a material misrepresentation." *Id.* (citing *United Family Life Ins. Co. v. Shirley*, 248 S.E.2d 635, 636 (1978)).

    There is no question that an inflated personal property valuation submitted to an insurer in a proof of loss constitutes a material misrepresentation where it would affect the amount the insurer would be obligated to pay under the policy. *See OSA Healthcare, Inc. v. Mount Vernon Fire Ins. Co.*, 975 F. Supp. 2d 1316, 1323 (N.D. Ga. 2013) (holding that "a statement made on a sworn proof of loss statement is material because if an insurer takes the statement at face value, then it would have been obligated to pay that amount"); *Scott v. Allstate Prop. & Cas. Ins. Co.*, No. 08-CV-236, 2010 WL 1254295, at *5 (S.D. Ga. Mar. 30, 2010). However, Defendant does not point to anything in the record showing that Plaintiffs inflated the value of their personal property in their insurance claim. Instead, Defendant simply points to Plaintiffs' Bankruptcy Petition, contending that the valuation stated therein

is presumed to be true and thus conclusively establishes that Plaintiffs misrepresented the value in their insurance claim.

Defendant essentially argues that because Plaintiffs claimed one value of their personal property in their Bankruptcy Petition, any different value is automatically fraudulent. In support, Defendant relies on two Northern of District Georgia cases, *Unisun Ins. Co v. Diener*, No. 2:95-CV-160 (N.D. Ga. Jan. 16, 1997) (Doc. 19-12) and *Baker v. Allstate Ins. Co.*, 2:02-CV-73 (N.D. Ga. Nov. 20, 2002) (Doc. 19-13). Both of these cases, however, are inapposite.

In *Diener* and *Baker*,[9] the defendant-insurers asserted that the plaintiffs had materially misrepresented the value of their property in their proofs of loss after discovering that the plaintiffs had previously filed for bankruptcy and assigned significantly lower property valuations in their respective bankruptcy petitions. (*See* Docs. 19-12, 19-13.) The court agreed, finding that because the plaintiffs signed their bankruptcy petitions under penalty of perjury, they were presumed to have responded truthfully as to the value of their assets. (*Id.*) As such, the court concluded that the plaintiffs misrepresented the value of their property in their insurance claim and were, thus, entitled to no recovery. (*Id.*) In so concluding, the court effectively treated the plaintiffs' statements in their bankruptcy petitions as judicial admissions.

Numerous courts have held that "[s]tatements in bankruptcy schedules [that] are executed under penalty of perjury . . . are eligible for treatment as judicial admissions." *In re Rolland*, 317 B.R. 402, 421 (Bankr. C.D. Cal. 2004) (collecting cases).[10] "Judicial admissions are formal concessions . . . that are binding upon the party making them." *Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, No. 12-CV-02422, 2014 WL 9953611, at *6 (N.D.

---

[9] *Diener* and *Baker* are sister opinions where the reasoning in *Baker* relies almost exclusively on *Diener*. The Court therefore analyzes these cases together.

[10] *See also In re Kane*, 470 B.R. 902, 925 (Bankr. S.D. Fla. 2012) (finding that because the debtor's "schedules are signed under oath," they "constitute admissions with regard to the information contained therein"); *In re Arcade Pub., Inc.*, 455 B.R. 373, 383 (Bankr. S.D.N.Y. 2011) ("Bankruptcy schedules, executed under penalty of perjury, when offered against a debtor are eligible for treatment as judicial admissions."); *In re George*, 315 B.R. 624, 627 (Bankr. S.D. Ga. 2004) (finding that because the debtor "swore under penalty of perjury that the vehicle is worth $2,500.00[,] [t]his statement of value constitutes a judicial admission"); *Matter of Musgrove*, 187 B.R. 808, 812 (Bankr. N.D. Ga. 1995) (finding that the debtor's statement in his bankruptcy schedule, "standing alone, constitutes a judicial admission").

Ga. June 4, 2014), *aff'd* 609 F. App'x 578 (11th Cir. 2015); *see also Keller v. United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir. 1995). Such statements "are proof possessing the highest probative value. Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983).

"Judicial admissions are not conclusive, however, if the court allows the party to withdraw the admission or if the underlying pleading is amended or withdrawn." *Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1349 (M.D. Fla. 2014) (citation omitted). Instead, the prior statement "remains [as] competent, though controvertible, evidence." *Id.* (quoting *Thyssen Elevator Co. v. Drayton–Bryan Co.,* 106 F. Supp. 2d 1355, 1361 n. 9 (S.D. Ga. 2000)). As the Ninth Circuit has explained, "[w]hen a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as . . . competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent." *Lawshe v. Amerus Life Ins. Co.*, 19 F. App'x 692, 695 (9th Cir. 2001).

In other words, the prior statement simply serves as an evidentiary admission. As noted by the Southern District of Georgia, "[e]videntiary admissions are to be distinguished from judicial admissions. An evidentiary admission is not conclusive but is subject to contradiction or explanation." *Muhs v. River Rats, Inc.*, 586 F. Supp. 2d 1364, 1378 (S.D. Ga. 2008). Thus, "when [bankruptcy] schedules are amended, the old schedules are subject to consideration by the court [only] as evidentiary admissions." *In re Rolland*, 317 B.R. at 422; *see also In re Roots Rents, Inc.*, 420 B.R. 28, 40-41 (Bankr. D. Idaho 2009) (finding that the debtor's amended petition retained "evidentiary effect"). Unlike the plaintiffs in *Diener* and *Baker*, Plaintiffs amended their Bankruptcy Petition before making their demand for payment and prior to commencing this lawsuit. Thus, although the unamended Bankruptcy Petition can

serve as evidence that Plaintiffs materially misrepresented the value of their personal property in their proof of loss, it cannot serve as conclusive proof of such.[11]

The inquiry, however, does not end there. While the unamended Bankruptcy Petition could lead one to assume that Plaintiffs made material misrepresentations in their proof of loss, the undisputed facts belie that assumption. Defendant's adjustors testified that they had no reason to question or dispute Plaintiffs' personal property inventory and valuation and that, but for the discovery of the Bankruptcy Petition, Defendant would have paid out the claim. In fact, when asked to identify Plaintiffs' alleged material misrepresentation, Ms. Hatfield responded that "the material misrepresentation is – relates to the judicial estoppel as far as the difference in what [Plaintiffs] told us." (*Id.* at 33:21-23.) Likewise, Mr. Simpson testified that the "claim was denied solely because of the material misrepresentation in the bankruptcy filing in 2011 as it relates to [Plaintiffs' personal property]." (*Id.* at 30:3-7; *see also* Doc. 20-1 at 30:5-10.) Thus, according to Defendant's own adjustors, Plaintiffs made no actual material misrepresentations – fraudulent or otherwise – in connection with the submission of their insurance claim.[12] Unlike instances where an insurer actually disputes the value of the personal property submitted in a proof loss,[13] because Defendant's sole basis for denying Plaintiffs' claim was the Bankruptcy Petition's lower personal property valuation and Defendant's belief that Plaintiffs would be judicially estopped from challenging that valuation, Defendant has failed to establish that Plaintiffs materially misrepresented the value of their personal property in their proof of loss.

Not only is there no evidence of any misstatements in the proof of loss, the record is also devoid of any evidence that Plaintiffs acted with the requisite intent to defraud Defendant. In order to void coverage under a misrepresentation clause, it "must appear that

---

[11] This conclusion is also consistent with the rule that "judicial admissions are binding for the purpose of the case in which the admissions are made, not in separate and subsequent cases." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 n.17 (11th Cir. 2009) (quoting *In re Raiford*, 695 F.2d 521, 523 (11th Cir. 1983)).

[12] In fact, in its refusal to Plaintiffs' demand for payment, Defendant never questioned any of the information stated in Plaintiffs' proof of loss. Instead, Defendant focused its inquiry on the applicability of judicial estoppel, requesting explanations and documents related to Plaintiffs purported fraud on their creditors and the bankruptcy court. (*See* Doc. 1-6.)

[13] *See Atai v. Allstate Indem. Co.*, No. 13-CV-342, 2014 WL 1414315, at *3 (N.D. Ga. Apr. 11, 2014) (finding that the defendant provided "sufficient evidence to create an issue of fact concerning whether the Plaintiff concealed or misrepresented any material fact or circumstance" by showing that the replacement costs for several of the plaintiff's reported losses "were so disproportionate as to suggest fraudulent activity").

[the] false statements were made wilfully and intentionally for the purpose of defrauding the insurer." *American Alliance*, 8 S.E.2d at 160. "Generally, the question of whether the insured acted with intent to deceive is a question for the jury." *Fiveash*, 603 F. App'x at 776 (citing *Ga. Farm Bureau Mut. Ins. Co. v. Richardson*, 457 S.E.2d 181, 184 (1995)). "However, as a matter of law, where there is 'no evidence that the misstatements in the proof of loss were fraudulent,' the insurer cannot rely on the misstatements in the proof of loss to void coverage under the policy." *Certain Underwriters*, 2015 WL 5684114, at *7 (quoting *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 601 (5th Cir. 1981)).

The undisputed facts show that Plaintiffs' actions with regard to the filing of their insurance claim were entirely proper, including: (i) timely notifying Defendant of their loss; (ii) meeting with several of Defendant's adjustors at the property; (iii) submitting to an examination under oath; (iv) providing Defendant with certain financial records; and (v) preparing an itemized personal property inventory at the Defendant's request. Defendant has offered no evidence of fraud on the part of the Plaintiffs in connection with the submission of their insurance claim or during Defendant's investigation of the claim. *Cf. Meyers v. State Farm Fire & Cas. Co.*, 801 F. Supp. 709, 716 (N.D. Ga. 1992) (finding that an intent to defraud could be inferred where the plaintiffs did not cooperate with the defendant during the investigation of the claim and gave misleading answers to the defendant). Rather, Defendant's argument appears to be that Plaintiffs' alleged attempt to defraud the Bankruptcy Court is proof of their intent to defraud Defendant. However, that Plaintiffs may have fraudulently undervalued their personal property in their Bankruptcy Petition does not establish that Plaintiffs fraudulently overvalued their personal property in their insurance claim.

Without any evidence that Plaintiffs acted with the requisite intent to defraud Defendant, the Court cannot conclude that Plaintiffs breached the Misrepresentation Clause. *See Allstate Ins. Co. v. Baugh*, 327 S.E.2d 576, 578 (Ga. Ct. App. 1985) (finding that although the plaintiffs misrepresented the value of some of the property destroyed in a fire, they were still entitled to loss coverage because "it was not shown that these misstatements were wilfully or intentionally made for the purpose of defrauding the [insurance] company"). Accordingly, because Defendant has failed to offer any evidence to create a genuine issue of

material fact as to whether Plaintiffs misrepresented the value of their personal property in their proof of loss with the intent to defraud Defendant, Plaintiffs are entitled to summary judgment on their claim for the loss of their personal property.[14]

### B.   Dwelling Protection

Defendant denied Plaintiffs' claim for the loss of their dwelling based on Plaintiffs' inconsistent personal property valuations. However, Defendant offers no explanation as to how such inconsistencies establish that Plaintiffs made material misrepresentations regarding the loss of their dwelling.

Although not clearly articulated, Defendant apparently takes the position that any misrepresentation in connection with the submission of a claim voids the entire Policy. This position, however, is inconsistent with the terms of the Policy, which states that Defendant does "not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." (Doc. 19-3 at 26.) While there are some insurance contracts which provide that the "entire [p]olicy shall be void if the [insured] has concealed or misrepresented any material fact or circumstances concerning this insurance," *Rogers & Sons, Inc. v. Santee Risk Managers, LLC*, 631 S.E.2d 821, 824 (Ga. Ct. App. 2006), the Policy does not contain such a blanket exclusion. Instead, the exclusion in the Policy only applies to a particular loss or occurrence where there are material misrepresentations. The loss for which Defendant contends Plaintiffs made material misrepresentations is the loss of Plaintiffs' personal property. Defendant offers no evidence that Plaintiffs made material misrepresentations in connection with the loss of their dwelling. In fact, Defendant concedes that Plaintiffs made no such misrepresentations. As such, Defendant has failed to establish that Plaintiffs "concealed or misrepresented any material fact or circumstance" relating to loss of their dwelling.

Defendant also offers no explanation for how misrepresentations regarding the value of Plaintiffs' personal property would be material to the settlement of Plaintiffs' claim for

---

[14] In their briefing, Plaintiffs aver that they did not make any inconsistent statements regarding the value of their personal property and that the differing valuations can be explained by the different valuation methods that were employed. Specifically, Plaintiffs assert that they valued their personal property in their Bankruptcy Petition using the thrift store value, whereas they used the replacement cost for valuing their property in their insurance claim. The Court need not address Plaintiffs' contention, however, because Defendant has failed to put forth any evidence showing that Plaintiffs' acted with the requisite intent to defraud Defendant.

the loss of their dwelling. As stated above, a "misrepresentation is material if it 'might affect the [insurer's] action in respect to . . . settlement or adjustment of the claim of the insured.'" *Perry*, 734 F.2d at 1443 (11th Cir. 1984) (quoting *American Alliance*, 8 S.E.2d at 160). While an inflated personal property valuation would certainly affect the amount Defendant would be required to pay for the loss of Plaintiffs' personal property, it would not affect the amount Defendant would be required to pay for the loss of Plaintiffs' dwelling. *See Scott*, 2010 WL 1254295, at *4 (finding that although the plaintiff's misrepresentation was material to their claim for living expenses "because it actually affected the settlement or adjustment of the claim," it was "not material to the settlement or adjustment of [the plaintiff's] claims for personal property loss and structural damage").

Not only does the Policy specifically provide for separate coverage limits and distinguish between "Dwelling Protection" and "Personal Property Protection," the amount Defendant is required to pay for the loss of Plaintiffs' dwelling is fixed by statute. Georgia's Valued Policy Statute provides in pertinent part:

> Whenever any policy of insurance is issued to a natural person or persons insuring a specifically described one or two family residential building or structure located in this state against loss by fire and the building or structure is wholly destroyed by fire without fraudulent or criminal fault on the part of the insured or one acting in his behalf, the amount of insurance set forth in the policy relative to the building or structure shall be taken conclusively to be the value of the property except to the extent of any depreciation in value occurring between the date of the policy or its renewal and the loss . . . .

O.C.G.A. § 33–32–5(a); *see also Harmon v. Allstate Prop. & Cas. Ins. Co.*, 488 F. App'x 419, 420 (11th Cir. 2012) ("Georgia's Valued Policy Statute, O.C.G.A. § 33-32-5, provides that when a residential building is wholly destroyed by fire [without fraudulent fault], the amount of insurance set out in the policy is conclusive, except for depreciation."). "[T]he gravamen of Valued Policy Statutes is that, in defined circumstances, the amount of a property insurance policy is conclusive as to the value of the subject property and may not be contested after loss, either by the insured or by the insurer." *Georgia Farm Bureaus Mut. Ins. Co. v. Franks*, 739 S.E.2d 427, 433-34 (Ga. Ct. App. 2013). The purpose of Georgia's statute is to protect "property owners from the overwhelming burden of proving the value of property after it has been totally destroyed by fire by 'conclusively' establishing that the value of the property

equals the face value of the policy." *Marchman v. Grange Mut. Ins. Co.*, 500 S.E.2d 659, 661 (Ga. Ct. App. 1998). "In this way, a property owner is entitled to the benefits of the insurance coverage without the difficult and perhaps impossible task of proving actual damages." *Id.*

In is undisputed: (i) that the Policy insured Plaintiffs' dwelling for $274,608; (ii) that Plaintiffs' dwelling was completely destroyed in the fire, which loss was covered under the Policy; and (iii) that there was no depreciation of the dwelling from the time the Policy was issued until the time of the fire. Furthermore, there is no evidence, and Defendant does not even contend, that Plaintiffs committed arson. (Doc. 21-1 at ¶ 47.) Therefore, Georgia's Valued Policy Statute applies. As such, regardless of whether Plaintiffs made material misrepresentations regarding the value of their personal property, Defendant would still be obligated to provide coverage for the loss of Plaintiffs' dwelling as those misrepresentations would not affect the settlement of Plaintiffs' claim for the loss of their dwelling.[15] Accordingly, Plaintiffs are entitled to summary judgment on their claim for the loss of their dwelling.

## III.   Bad Faith

### A.   Personal Property Protection

O.C.G.A. § 33-4-6 authorizes statutory damages and an award of attorney's fees when, "in the event of a loss which is covered by a policy of insurance," the insurer refuses in "bad faith" to pay the covered loss "within 60 days after a demand has been made by the holder of the policy." O.C.G.A. § 33-4-6. "[T]his additional liability is not automatically imposed on an insurance company every time it refuses to pay the underlying claim prior to trial," even if the insured successfully litigates the dispute. *Winningham v. Centennial Ins. Co.*,

---

[15] In fact, courts in other jurisdictions have held that even where a plaintiff overvalues their real property in their proof of loss, such misrepresentations do not void the policy where, as here, the amount is fixed by a value statute. *Heady v. Farmers Mut. Ins. Co.*, 349 N.W.2d 366, 371 (Neb. 1984) (adopting "the proposition that the overvaluation of totally destroyed property in a proof of loss statement filed in connection with recovery on a valued insurance policy is immaterial and no defense to recovery on the policy, even when a provision in the policy would void the policy for such statements") (collecting cases). As the court in *Heady* stated, "[i]t is not perceived how the company could have been influenced by any such over-estimate to settle or compromise, or not to settle or compromise, the claim for the insurance so fixed conclusively by the statute; for in no case could the company be compelled to pay more, or could the insured be induced thereby to receive less, than the amount so fixed by law." *Id.* at 372 (quoting *Cayon v. The Dwelling House Ins. Co. of Boston, Mass.*, 32 N.W. 540, 541 (Wis. 1887)).

708 F.2d 658, 659 (11th Cir. 1983). "Instead, the insurer is liable for the penalty and attorney's fees only if it acts in 'bad faith' in refusing to pay the claim." *Id.* (citations omitted). It is undisputed that the loss of Plaintiffs' personal property was covered under the Policy and that Defendant refused Plaintiffs' demand for payment. Therefore, the issue before the Court is whether Defendant's refusal was made in bad faith.

Bad faith is defined as "any frivolous and unfounded refusal in law or in fact to comply with the demand of the policyholder to pay according to the terms of the policy." *Southern Gen. Ins. Co. v. Kent*, 370 S.E.2d 663, 665 (Ga. Ct. App. 1988). "The burden of proof is on the insured to establish bad faith." *Winningham*, 708 F.2d at 659; *see also Bell v. Liberty Mut. Fire Ins. Co.*, 319 Ga. App. 302, 306, 734 S.E.2d 894, 899 (Ga. Ct. App. 2012) ("To support a cause of action under O.C.G.A. § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith."). A party can meet this burden by showing "that under the terms of the policy upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no 'good cause' for resisting and delaying payment." *Georgia Int'l Life Ins. Co. v. Harden*, 280 S.E.2d 863, 866 (Ga. Ct. App. 1981). "As a matter of law, bad faith penalties and attorney fees under O.C.G.A. 33-4-6 are not awardable if an insurer has a reasonable and probable cause for refusing to pay a claim." *Progressive Am. Ins. Co. v. Horde*, 577 S.E.2d 835, 837 (Ga. Ct. App. 2003) (citations omitted). Reasonable and probable cause for refusing to pay a claim exists where a defendant "raises a reasonable question of law or a reasonable issue of fact even though not accepted by the trial court or jury." *Winningham*, 708 F.2d at 659 (quoting *Colonial Life & Accident Insurance Co. v. McClain*, 253 S.E.2d 745, 746 (Ga. 1979)); *see also Moon v. Mercury Ins. Co. of Georgia*, 559 S.E.2d 532, 534-35 (Ga. Ct. App. 2002) ("Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact.") (citation omitted); *Fireman's Fund Ins. Co. v. Dean*, 441 S.E.2d 436, 438-39 (Ga. Ct. App. 1994) (noting that Georgia "courts have consistently held that no bad faith exists where there is a doubtful question of law involved") (citation omitted).

Plaintiffs contend that Defendant acted in bad faith by unreasonably refusing their claim for the loss of their personal property, maintaining that Defendant's only basis for denying their claim was the meritless belief that judicial estoppel applied. In support,

Plaintiffs rely on *Transp. Ins. Co. v. Piedmont Const. Grp., LLC.*, 686 S.E.2d 824 (Ga. Ct. App. 2009). There, the defendant-insurer denied the plaintiff's claim for coverage following a fire that extensively damaged a building that the plaintiff was renovating. *Id.* at 825-26. Relying on a single case from the Georgia Court of Appeals, the defendant contended that the plaintiff's claim fell within the policy's business-risk exclusion, which abrogated the defendant's obligation to provide coverage. *Id.* at 827-28. The trial court disagreed, holding that not only did the policy provide coverage, but that the defendant acted in bad faith in denying the plaintiff's claim. *Id.* at 827-29.

The Georgia Court of Appeals affirmed, finding that the defendant based their refusal to provide coverage on "a novel and radical interpretation of a single Georgia case." *Id.* at 825. The court agreed with the trial court that the defendant could not "reasonably take the position that because one Court of Appeals case found a business-risk exclusion to be clear and unambiguous, all cases involving business-risk exclusions are forever to be interpreted as clear and ambiguous." *Id.* at 829. The court found it "[p]articularly noteworthy . . . that [the defendant] simply submitted no admissible evidence to defend itself on [the plaintiff's] bad faith claims." *Id.* at 828.

Although Georgia courts are generally reluctant to find that "bad faith exists where there is a doubtful question of law involved." *Dean*, 441 S.E.2d at 438-39, the court in *Piedmont* carved out an exception to this rule where a defendant fails to raise a defense to a plaintiff's bad faith claim. Specifically, the court held that "[i]f an insurance company chooses NOT to provide a defense, it assumes the risk that it is not absolutely right that the claim does not fall under the policy, and it exposes itself to a bad faith claim, even if the insured's claim is a 'doubtful question of law.'" *Piedmont*, 686 S.E.2d at 828 (emphasis in original). The court reasoned that "[b]y stubbornly relying on its exclusion and failing to offer any evidence to support its position, [the defendant] chose the riskiest of all litigation strategies and must suffer the consequences of such a strategy." *Id.* at 829. The court therefore concluded that because the defendant had "failed to set forth any defense to a determination of bad faith other than its meritless reliance on the business-risk clauses of the policy, a finding of bad faith as a matter of law was eminently justified." *Id.*

As in *Piedmont*, Defendant did not submit any evidence or "set forth any defense to a determination of bad faith." *Id.* Instead, Defendant stubbornly relies on judicial estoppel without providing any evidence that Plaintiffs intentionally misrepresented the information submitted in their proof of loss. In so doing, Defendant ignores well-settled Georgia law that "a plaintiff may amend an erroneous bankruptcy schedule to avoid judicial estoppel," *Tuten* , 2014 WL 6908866, at *2, and offers no support for its position that this rule is limited to omitted tort claims. In fact, Defendant relies on authority in its briefing that directly contravenes its position. *See Benton*, 629 S.E.2d at 208 (evaluating applicability of judicial estoppel where plaintiff allegedly omitted from her bankruptcy petition certain assets that could be awarded in her divorce proceedings). Therefore, there is not even a "doubtful question of law" regarding whether judicial estoppel applies.

The Court also finds it troubling that Defendant would deny coverage for the loss of Plaintiffs' property based on an equitable doctrine where there is no evidence that Defendant was any way harmed by Plaintiffs' alleged misconduct in the bankruptcy proceedings. Courts are generally reluctant to exercise their equitable powers in such situations. *See, e.g., Yerk*, 2010 WL 3746815, at *4 (refusing to apply judicial estoppel where the defendant "was neither a creditor nor a party to the bankruptcy proceedings" and thus unaffected by the plaintiff's alleged misconduct); *see also Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979) (finding that the doctrine of unclean hands does not apply "unless the defendant can show that he has personally been injured by the plaintiff's conduct") (citation omitted). Defendant's unwavering reliance on judicial estoppel seems particularly unjustified here, given that the application of the doctrine would create a windfall for Defendant while also adversely affecting Plaintiffs' innocent creditors in the bankruptcy. Reliance on an equitable doctrine to produce an inequitable result cannot be said to be made in good faith.

Defendant's reliance on *Diener* and *Baker* also does not save it from a finding of bad faith. As discussed, those cases are factually distinguishable from this case in that Plaintiffs amended their Bankruptcy Petition prior to making their demand for payment and prior to receiving a discharge. Like the defendant in *Piedmont*, Defendant cannot reasonably take the position that because one court, in a case that is factually distinguishable, held that

inconsistent statements in an unamended bankruptcy petition established a breach of contract, all courts presented with inconsistencies between bankruptcy petitions and subsequent insurance claims would find a breach of contract. Furthermore, even if *Diener* and *Baker* made the determination of whether Plaintiffs breached the Policy a close question of law, *Piedmont* dictates that Defendant would still be subject to a finding of bad faith because it did not produce any evidence or set forth any defense to Plaintiffs' bad faith claim. *See Piedmont*, 686 S.E.2d at 828.

"[W]hile the existence of bad faith under O.C.G.A § 33-4-6 is ordinarily a question for the jury, where the facts with regard to the insurer's conduct are clear and undisputed, the insurer may be liable for bad faith penalties under that Code section as a matter of law." *Id.* Defendant has set forth no evidence that Plaintiffs materially misrepresented the value of their personal property in their insurance claim with the requisite intent to defraud Defendant. To the contrary, Mr. Simpson admitted that "there was nothing that [Plaintiffs] claimed that wasn't in the house or that was grossly overvalued," and that, "[b]ut for the bankruptcy filing and what [Plaintiffs] swore to in the bankruptcy filing," Plaintiffs' claim would have been covered under the Policy. (Doc. 20-5 at 28:14-23.) After discovering the Bankruptcy Petition, however, Defendant made no further attempt to verify the accuracy of Plaintiffs' personal property inventory or valuation because it believed that judicial estoppel applied. (*Id.* at 24:19-26:9; Doc. 20-1 at 60:15-64:10; *see also* Doc. 20-1 at 34:12-13, 35:7-12, 37:7-16, 38:4-10.) In fact, when asked how she knew whether Plaintiffs had lied in their Bankruptcy Petition or in their insurance claim, Ms. Hatfield responded "I don't know." (Doc. 20-1 at 61:4-22.)

Certainly, Defendant's discovery of the Bankruptcy Petition warranted further investigation into the veracity of Plaintiffs' insurance claim. It did not, however, wholly relieve Defendant of its obligation to undertake a reasonable investigation into the validity of the claim; and, to make payment in the event Plaintiffs' loss was covered under the Policy. In other words, the Policy did not relieve Defendant of its obligation to provide loss coverage if it discovered that Plaintiffs made material misrepresentations to anyone, including the Bankruptcy Court or the Plaintiffs' creditors. Instead, the Policy relieved Defendant of its responsibility to cover a loss for which Plaintiffs submitted claim if it discovered that, in

submitting the claim, Plaintiffs made material misrepresentations *to* Defendant with the intent to defraud Defendant.

An insurer cannot abdicate its contractual duties simply because it believes it might have some legal authority to deny an insured's claim, and then offer no evidence or defense when a plaintiff makes a claim of bad faith. To hold otherwise would perversely incentivize insurers to advance novel and radical legal arguments as grounds to refuse payment, without having to conduct an investigation into the validity of an insured's claim or to produce any evidence to refute a claim of bad faith. This is precisely want the court in *Piedmont* sought to prevent. Therefore, because Defendant has "failed to set forth any defense to a determination of bad faith other than its meritless reliance on" the applicability of judicial estoppel and Plaintiffs' alleged breach of the Misrepresentation Clause, the Court finds that "a finding of bad faith as a matter of law [is] eminently justified." *Piedmont*, 686 S.E.2d at 829. Accordingly, Plaintiffs are entitled to summary judgment on the issue of Defendant's liability, under O.C.G.A. § 33-4-6, for refusing to provide coverage for the loss of Plaintiffs' personal property.

### B.   Dwelling Protection

Defendant's refusal to provide coverage for the loss of Plaintiffs' dwelling is even more egregious than its refusal to provide coverage for the loss of Plaintiffs' personal property. It is undisputed that Plaintiffs made no misrepresentations or inconsistent statements regarding their dwelling. Nevertheless, Defendant denied Plaintiffs' dwelling claim based on its meritless belief that judicial estoppel applied and/or that Plaintiffs materially misrepresented the value of their personal property. However, as discussed above, Defendant has offered no explanation as to why Plaintiffs' inconsistent statements regarding their personal property should preclude Plaintiffs from pursuing their claim for the loss of their dwelling. Defendant has further failed to offer any argument for how Plaintiffs' inconsistent personal property valuations materially affected the settlement of Plaintiffs' claim for the loss of their dwelling.

As in *Piedmont*, Defendant has not submitted any evidence or advanced any argument to defend itself against a determination of bad faith. Instead, Defendant stubbornly and unjustifiably maintains that Plaintiffs are entitled to no recovery for the loss of their dwelling.

Defendant has therefore "chose the riskiest of all litigation strategies and must suffer the consequences of such a strategy." *Piedmont*, 686 S.E.2d at 829. As such, "a finding of bad faith as a matter of law [is] eminently justified." *Id.* Accordingly, Plaintiffs are entitled to summary judgment on the issue of Defendant's liability, under O.C.G.A. § 33-4-6, for refusing to provide coverage for the loss of Plaintiffs' dwelling.

<u>**CONCLUSION**</u>

In light of the foregoing, Defendant's Motion for Summary Judgment (Doc. 19) is **DENIED and** Plaintiffs' Motion for Summary Judgment (Doc. 21) is **GRANTED**. This case shall proceed to trial on the issue of Plaintiffs' damages under O.C.G.A. § 33-4-6. The Court will withhold entering judgment in this case until all issues are finally resolved.

**SO ORDERED**, this 14th day of December, 2015.

_____/s/ Leslie J. Abrams_____
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**